**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-1937**

───────────────

JOSSELYN GABRIELA RODRIGUEZ-SOLIS,

Petitioner,

v.

TODD BLANCHE, Acting Attorney General,

Respondent.

───────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────────

Argued: January 27, 2026                              Decided: May 21, 2026

───────────────

Before QUATTLEBAUM, HEYTENS, and BERNER, Circuit Judges.

───────────────

Petition granted; vacated and remanded with instructions by published opinion. Judge Heytens wrote the opinion, which Judge Berner joined. Judge Quattlebaum wrote a dissenting opinion.

───────────────

**ARGUED:** Parisa Sadeghi, O'MELVENY & MYERS LLP, New York, New York, for Petitioner. Gregory Michael Kelch, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Andrés López, THE LOPEZ LAW FIRM, PLLC, Charlotte, North Carolina; Benjamin R. Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Brett A. Shumate, Assistant Attorney General, Leslie McKay, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

TOBY HEYTENS, Circuit Judge:

The Immigration and Nationality Act guarantees noncitizens who are in removal and asylum proceedings "the privilege of being represented, at no expense to the Government, by counsel of" their choosing. 8 U.S.C. § 1229a(b)(4)(A). Just weeks before two key deadlines in her case, the attorney who had been representing petitioner Josselyn Gabriela Rodriguez-Solis for more than a decade sought and was granted permission to withdraw. After an immigration judge (IJ) denied Rodriguez-Solis's request for time to find a new lawyer, she was forced to proceed pro se at the final merits hearing for her asylum claim. We hold the IJ's actions violated Rodriguez-Solis's statutory right to counsel and remand to the Board of Immigration Appeals to consider in the first instance whether that violation prejudiced her. We thus need not reach Rodriguez-Solis's alternative argument that the IJ also violated her rights under the Due Process Clause.

I.

Rodriguez-Solis entered the United States in 2010, having fled Honduras earlier that year. Almost immediately, she encountered immigration officials and was served with a document asserting she was removable because she had not been lawfully admitted or paroled into this country.

Rodriguez-Solis's first master calendar hearing (basically, a status conference or docket-management hearing) took place a little less than two months later. Appearing pro se, Rodriguez-Solis asked to transfer the proceedings to North Carolina, where she had been living with relatives since being released. An IJ granted that request.

Rodriguez-Solis's next master calendar hearing was about three months later in

2

Charlotte, North Carolina. During that hearing, Rodriguez-Solis was represented by attorney Cynthia Aziz. Aziz conceded removability and waived a formal reading of Rodriguez-Solis's rights.

Although an IJ set an individual hearing date for nearly three months later, that hearing never took place. Instead, in February 2011—almost seven months after the second master calendar hearing—Aziz submitted an asylum application on Rodriguez-Solis's behalf. After that, no additional hearings were held for more than a year and a half. Then, in April 2013, the government moved to "administratively close[]" Rodriguez-Solis's removal proceedings "in an exercise of prosecutorial discretion." JA 767. An IJ granted that motion a few days later.

In May 2017—more than four years later—the government asked the immigration court to reopen Rodriguez-Solis's removal proceedings because Rodriguez-Solis "no longer warrant[ed] prosecutorial discretion." JA 749. An IJ granted that motion and scheduled a new master calendar hearing for September 2017.

Four more years of hearings and postponements followed.

For example, eleven days before the scheduled master calendar hearing, Aziz filed a motion to postpone it because Rodriguez-Solis was pregnant and her doctor discouraged her from traveling between her home in Southport, North Carolina, and the immigration court in Charlotte. An IJ granted that motion and set a new master calendar hearing for more than four months later. That hearing went forward as scheduled, and an IJ set an individual merits hearing for Rodriguez-Solis's asylum claim for May 2018.

Neither Rodriguez-Solis nor Aziz showed up for the May 2018 hearing. When the

IJ who conducted that hearing telephoned Aziz from the bench, Aziz said she failed to put the hearing date on her calendar. The IJ ordered Rodriguez-Solis removed in absentia but later granted Aziz's motion to reopen the proceedings and scheduled a new individual hearing for February 2019.

The February 2019 hearing never happened. Before the scheduled hearing date, Aziz filed two submissions with the immigration court. First, she asked the court to provide a Honduran sign language interpreter for Rodriguez-Solis's sister, who is blind and deaf and would be testifying at Rodriguez-Solis's hearing. Second, Aziz filed a brief and evidence supporting Rodriguez-Solis's asylum application.

For reasons not apparent from the record—but which the government does not assert were in any way Rodriguez-Solis's fault—the immigration court then sua sponte rescheduled the hearing several times. Those postponements added almost another year and a half to the clock before the court finally set another individual merits hearing for August 9, 2021.

Once again, the hearing hit a snag. Although Aziz was present, Rodriguez-Solis was unable to enter the courtroom because she had been exposed to COVID-19 at work. The case was now assigned to a different IJ—who presided over the remainder of Rodriguez-Solis's proceedings and issued the decision that eventually led to our review. During that hearing, Aziz had three relevant exchanges with the IJ. First, after some discussion off the record, the parties agreed the individual hearing would be rescheduled

4

for October 18, 2021.[1] Second, the IJ raised the possibility that Rodriguez-Solis might be eligible for cancellation of removal and stated that Aziz "will be looking into whether that application will be appropriate to file or not." JA 117. Third, the IJ discussed the brief Aziz had filed more than two-and-a-half years earlier, specifically its formulation of the particular social group underlying Rodriguez-Solis's asylum claim. Based on an initial review of the brief, the IJ stated the proposed social group "wasn't clear enough" and "seem[ed] somewhat vague." JA 120. Aziz responded that she wrote the brief "a while back" and "would like to update it." *Id.* Accordingly, the IJ ordered the parties to submit any additional or supplemental briefing or documentation by September 18, 2021, one month before the individual hearing.

Eight days after the August 9 hearing—and just four weeks before the IJ's new briefing deadline—Aziz moved to withdraw as Rodriguez-Solis's attorney after more than a decade of representing her. The terse motion stated only that Rodriguez-Solis had "failed to cooperate" with Aziz and that Aziz was therefore "no longer able to represent" her "[e]ffectively and zealously." JA 624. The motion did not elaborate further or state whether Rodriguez-Solis had consented to the withdrawal.

Seven days later, the IJ granted Aziz's withdrawal motion without making any findings or providing any reasoning. The record does not make clear when Rodriguez-Solis was informed (either by Aziz or the immigration court) that her lawyer had formally

---

[1] That date was the same day as Rodriguez-Solis's sister's hearing in her separate asylum case, meaning the only Honduran sign language interpreter available to the court could do both hearings on the same day.

withdrawn from her case, and the IJ made no findings about that issue.

The October 18 merits hearing went forward as scheduled. Appearing without a lawyer, Rodriguez-Solis asked for more time to secure new counsel, asserting Aziz had let her know "that she was not representing me any longer" only "a month before the Court hearing" (which would have been in mid-September) and that she had been looking for a new lawyer "ever since." JA 127. Rodriguez-Solis explained that "all the lawyers" had given "appointments for a month" out and that "[t]he only one who responded to a phone call . . . said that he could not represent me because he would only have one week before the hearing, and he could not be ready." *Id*. The government opposed Rodriguez-Solis's request for time to obtain new counsel, arguing she "ha[d] been in removal proceedings since 2010" and stating "[w]e are ready to proceed today." *Id.*

The IJ denied Rodriguez-Solis's request for a continuance to find a new lawyer. The IJ noted that Rodriguez-Solis's "case ha[d] been pending for 11 years" and that she "had an attorney for most of it." JA 127. The IJ further stated that Aziz moved to withdraw "at the end of August" and that "about six weeks" had passed "since that motion" was granted. JA 127–28. Finally, the IJ observed that "[w]e continued your case last time at your attorney's request and you already got another extension so at this point, the Court is ready to proceed." JA 128. When Rodriguez-Solis reminded the IJ that the previous continuance was because she had been exposed to COVID and could not enter the courtroom, the IJ responded by noting again that it had been "6 weeks" since Aziz had been granted permission to withdraw. *Id.*

After denying Rodriguez-Solis's request for a continuance, the IJ instructed

6

Rodriguez-Solis to review the written asylum application Aziz had filed on her behalf in 2011 and "make any changes that you might need to make" to ensure it is "true and complete." JA 129. When Rodriguez-Solis protested that "[t]he entire application [was] in English" and that she did not "feel sure" about her ability to do so without an attorney, the IJ stated that she would "review [the application] with you right now." *Id.* During that review, Rodriguez-Solis stated: "[T]he papers are not filled out completely. As you see, [Aziz] was not doing her job properly. How can I make sure that my asylum application is correct when this is not being done properly?" JA 136. The IJ disagreed, describing Aziz as "a competent attorney with several years, many years of experience." *Id.*

After going through the asylum application with her, the IJ then essentially conducted a direct examination of Rodriguez-Solis before giving the government an opportunity to cross. In response to the IJ's questions, Rodriguez-Solis described her time in Honduras, physical and verbal abuse by her father, and her fear of being killed if she returned to Honduras. Rodriguez-Solis's sister was set to testify next. Before she began, the government asked the sister to sign a confidentiality waiver to permit the use of any statements the sister made in Rodriguez-Solis's case against the sister in her own asylum case. The IJ explained the waiver's legal effect to the sister, who signed it and then testified in support of Rodriguez-Solis's application. Rodriguez-Solis and the government delivered closing statements, and the IJ took the matter under advisement.

A month later, the IJ issued a written decision denying Rodriguez-Solis's asylum application. In that decision, the IJ described its reasons for rejecting Rodriguez-Solis's request for a continuance as follows:

7

> [Rodriguez-Solis] appeared without counsel for her hearing on October 18, 2021. She requested a continuance to obtain counsel claiming she had been informed that she had no attorney less than a month before and had insufficient time to find an attorney. The Court noted that Ms. Aziz filed her motion to withdraw two months previously and communicated such to [Rodriguez-Solis]. Nonetheless, [Rodriguez-Solis] argued that she needed additional time. The Court noted her case began in 2010, over eleven years ago and was recalendared in 2017, more than four years ago and had been pending for an exceptional amount of time. She informed the Court that none of the attorneys she contacted would take her case, but the attorneys in the same building as the Court, whom she had contacted just days before the hearing, told her it was simply too close in time to the hearing for them to consider taking it on. The Court denied [Rodriguez-Solis]'s request for a continuance multiple times.

JA 79. On the merits of the asylum claim, the IJ concluded Rodriguez-Solis did not testify credibly and denied her application on that basis. The IJ entered an order directing that Rodriguez-Solis be removed to Honduras.

Rodriguez-Solis appealed to the Board of Immigration Appeals, which affirmed the IJ's decision and dismissed her appeal. Rodriguez-Solis's lead argument was that the IJ violated her "due process and statutory right to counsel by refusing to grant a continuance" at the October 18 merits hearing so she could find a new lawyer. JA 29. The Board rejected that argument, stating:

> [Rodriguez-Solis] was represented by counsel when her proceedings were reopened in 2017, and during the third trimester of her pregnancy. The record indicates that the Immigration Judge granted [Rodriguez-Solis]'s former counsel's motion to withdraw, and [Rodriguez-Solis] testified that counsel informed her she could not represent her, and that she had been searching for counsel. As such, [Rodriguez-Solis] had approximately one month before her next scheduled hearing to obtain counsel. Therefore, as [Rodriguez-Solis] was provided with sufficient time to retain counsel before her final hearing before the Immigration Judge, she has not established that the Immigration Judge violated her due process rights.

JA 4 (citations removed). Having concluded she had "sufficient time to retain counsel"

(*id.*), the Board did not consider whether Rodriguez-Solis was prejudiced by the IJ's denial of a continuance and by being forced to represent herself during the October 18 hearing.

## II.

We have jurisdiction to review Rodriguez-Solis's "final order of removal" under 8 U.S.C. § 1252(a)(1). "Though we review the opinions of both the Immigration Judge and Board, we consider the Immigration Judge's decision *only* to the extent the Board's decision adopted it or incorporated it." *Herrera-Alcala v. Garland*, 39 F.4th 233, 244 (4th Cir. 2022) (emphasis added); see *Martinez v. Holder*, 740 F.3d 902, 908 (4th Cir. 2014) (explaining that we review the Board's "opinion and not the opinion of the IJ" when the Board "issue[s] its own opinion without adopting the IJ's opinion"). Finally, even though we typically "review a denial of a motion for a continuance for an abuse of discretion," *Cabrera v. Garland*, 21 F.4th 878, 882 (4th Cir. 2022), "[w]e review de novo a claim that the procedures utilized in" Rodriguez-Solis's removal proceedings "contravened due process or the [Immigration and Nationality Act]." *Rusu v. U.S. Immigr. & Naturalization Serv.*, 296 F.3d 316, 320 (4th Cir. 2002); accord *Hernandez Lara v. Barr*, 962 F.3d 45, 53–54 (1st Cir. 2020) (explaining that, even though an IJ's "denial of a continuance" is "ordinarily" reviewed "for abuse of discretion," an assertion that such a denial violated a noncitizen's "statutory right to counsel presents a legal question warranting plenary review"); *Usubakunov v. Garland*, 16 F.4th 1299, 1304 (9th Cir. 2021) (similar); cf. *Williams v. Garland*, 59 F.4th 620, 639 (4th Cir. 2023) (holding that, despite its fact-intensive nature, the Board's ultimate "decision to deny equitable tolling presents a mixed question" of law and fact that we "review de novo").

9

III.

Separate and apart from the constitutional floor supplied by the Due Process Clause, the Immigration and Nationality Act creates procedural rights for noncitizens in removal proceedings. Among those rights is "the privilege of being represented, at no expense to the Government, by counsel of the [noncitizen]'s choosing who is authorized to practice in such proceedings." 8 U.S.C. § 1229a(b)(4)(A).

Both federal regulations and published Board decisions create rules designed to safeguard this statutory right to counsel. For example, immigration judges are required to "[a]dvise" noncitizens about their "right to representation" and obtain a "state[ment]" about whether the noncitizen "desires representation." 8 C.F.R. § 1240.10(a)(1). The Board also has stated that—when a noncitizen has not "expressly waived" "the statutory and regulatory privilege of legal representation"—IJs "*must*" afford noncitizens "a reasonable and realistic period of time to provide a fair opportunity . . . to seek, speak with, and retain counsel." *Matter of C-B-*, 25 I. & N. Dec. 888, 889 (B.I.A. 2012) (emphasis added); accord Gov't Br. 24–26 (discussing *Matter of C-B-* and framing the question before us as whether Rodriguez-Solis had "a reasonable period to obtain counsel").

A.

Under the circumstances of this case, we hold the IJ violated Rodriguez-Solis's statutory right to counsel by proceeding with the October 18, 2021, merits hearing over her objections.

1.

We are confronted immediately with a dispute about how much time

10

Rodriguez-Solis had to get a new lawyer. The government frames its entire presentation around a claim that Rodriguez-Solis had "two months" to do so, Gov't Br. 2, whereas the IJ apparently considered the relevant period to have been "six weeks," JA 128. In contrast, the Board described Rodriguez-Solis as having "approximately one month before her next scheduled hearing to obtain counsel." JA 4.

This dispute appears to arise from two misunderstandings. *First*, although the IJ lasered in on the date Aziz's withdrawal motion "was granted," JA 128, the relevant question is when Rodriguez-Solis *learned* she needed a lawyer. The government insists Rodriguez-Solis's uncounseled statements at the October 18 merits hearing show she knew she needed a new lawyer even before Aziz's withdrawal motion was granted. But the IJ made no findings about that issue. And—even more importantly—the Board (the entity whose decision we are reviewing here) based its decision on the premise that Rodriguez-Solis "had approximately one month," not two. JA 4.

*Second*, we agree with Rodriguez-Solis that the Board erred in focusing exclusively on the date of "her next scheduled hearing." JA 4. During the August 9, 2021, hearing—the one only Aziz attended because Rodriguez-Solis had been exposed to COVID—the IJ did not merely set an individual merits hearing for October 18, 2021. Instead, the IJ also expressed concern about the then-current briefing on Rodriguez-Solis's asylum claim and directed the parties to submit "all supplemental documents" no later than "September 18th"—"30 days *before* that hearing." JA 119 (emphasis added). The Board's opinion reflects no awareness about how its statement that Rodriguez-Solis "had approximately one month before her next scheduled hearing to obtain counsel," JA 4, interacts with that

submission deadline.[2]

Given these misunderstandings about the relevant timeline—and regardless of exactly when Rodriguez-Solis learned she needed a new attorney—we conclude the Board committed legal error in concluding she had "sufficient time to retain [new] counsel" after Aziz withdrew to protect her statutory right to counsel. JA 4. Based on the Board's framing of the issue, we do not know how much time (if any) the Board believed a new lawyer would have had to review and update Aziz's previous filings before the IJ's September 18 deadline. True, a new lawyer could start with the materials Aziz had prepared and submitted. But a new lawyer would need time to assess those materials to see what needed to be updated, address the IJ's already-on-the-record concerns about how those materials described the proposed social group, and consider the IJ's suggestion that Rodriguez-Solis might be eligible for cancellation of removal.

The problems persist even if we artificially limit our focus to the October 18 hearing date itself. A new lawyer would need time to build rapport with both Rodriguez-Solis and her sister to elicit the sort of "extremely traumatic" testimony necessary for Rodriguez-Solis's asylum hearing. Rodriguez-Solis Br. 26. And the process would be even more complicated here because the new lawyer would likely need help from a Honduran sign language interpreter to communicate with Rodriguez-Solis's sister. A new lawyer would also need time to decide whether any other witnesses should be called and to prepare

---

[2] The government's brief notes that Aziz filed both "a trial brief" and various pieces of evidence "[i]n advance of the merits hearing." Gov't Br. 7. But, as Rodriguez-Solis points out, that brief was filed in February 2019—well before both the IJ and Aziz stated on the record at the August 2021 hearing that the briefing needed updating.

any such witnesses for their testimony. See Rodriguez-Solis Br. 49 (asserting that a new lawyer "could have called two highly esteemed character witnesses to assuage any concerns the IJ had about [Rodriguez-Solis's] credibility"). It is unsurprising that Rodriguez-Solis could not find a new lawyer to take her case in the face of two quickly approaching deadlines.

In sum: This was Rodriguez-Solis's first request for more time to find a new lawyer after more than a decade of being represented by Aziz. There is no indication—much less a finding by the IJ or the Board—that Rodriguez-Solis fired Aziz or requested a continuance as "a dilatory tactic." *Freza v. Attorney Gen. U.S.*, 49 F.4th 293, 299 (3d Cir. 2022). The decision we are reviewing is premised on the idea that Rodriguez-Solis "had approximately one month" to obtain a new lawyer, JA 4, but that does not take into account the IJ's September 18 deadline for submitting updated documents. We hold that, under these circumstances, the IJ violated Rodriguez-Solis's statutory right to counsel by failing to give her "a reasonable and realistic period of time . . . to seek, speak with, and retain [new] counsel." *Matter of C-B-*, 25 I. & N. Dec. at 889.[3]

---

[3] Because the Board's decision rested solely on the view that Rodriguez-Solis had "sufficient time to retain counsel before her final hearing," JA 4, we do not consider the other grounds the IJ gave for denying a continuance. We note, however, that despite the IJ's repeated references to the sheer amount of time Rodriguez-Solis's case had been pending, the vast majority of that period was attributable to IJ-controlled scheduling decisions and the government's decision to suspend the proceedings for more than four years. We also decline to consider the government's suggestion that it was appropriate to reject Rodriguez-Solis's request for more time to find a new attorney because she was at fault for the withdrawal of the previous one because neither the Board nor the IJ relied on that justification.

2.

The government's responses are unpersuasive.

At times, the government suggests Rodriguez-Solis did not *really need* a lawyer at the hearing, asserting that "all that was" necessary by that point "was for her and [her sister] to testify about their experiences in Honduras" and that Rodriguez-Solis "could have called" (and presumably, directed) her own character witnesses despite proceeding pro se. Gov't Br. 22, 35. Besides trivializing the important work of immigration lawyers, that argument gets the statutory framework backwards. Like the similarly worded Sixth Amendment provision with which it shares obvious similarities, the statutory provision we are dealing with here does not say noncitizens in removal proceedings have a right to be represented by a lawyer if—but only if—they can establish they need one to effectively make their case. Instead, it says all noncitizens in removal proceedings "*shall* have the privilege of being represented, at no expense to the Government, by counsel of" their choice. 8 U.S.C. § 1229a(b)(4)(A) (emphasis added). And here, Rodriguez-Solis repeatedly made clear that she did not want to proceed without a lawyer.

The government also errs in suggesting that 8 U.S.C. § 1229(b)(1) shows "Congress believed" noncitizens should never need more than 10 days "to locate and retain an attorney." Gov't Br. 25–26. That provision states that, for a noncitizen to "be permitted the opportunity to secure counsel before the first hearing date in" their removal proceedings, "the hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear." But that 10-day period applies only to a "first hearing date"—in other words, an initial master calendar hearing—rather than the sort of final merits hearing at issue here.

14

In addition, the provision says the hearing "shall not be scheduled *earlier* than 10 days after the service of the notice to appear," 8 U.S.C. § 1229(b)(1) (emphasis added), not that 10 days is invariably sufficient even in that quite distinct context.

The government next asserts it would be inconsistent with *Jean v. Gonzales*, 435 F.3d 475 (4th Cir. 2006), to say "an Immigration Judge *must always* grant a continuance after an attorney withdraws." Gov't Br. 27 (emphasis added). Fair enough, but we announce no such rule. Instead, we endorse and adopt the Board's own statements that IJs must ensure that noncitizens have "a reasonable and realistic period of time to provide a fair opportunity . . . to seek, speak with, and retain counsel," *Matter of C-B-*, 25 I. & N. Dec. at 889, and we conclude the IJ failed to do so here.

That result fits comfortably alongside *Jean*. For one thing, the government identifies no language in *Jean* that is inconsistent with the rule we just announced—in fact, the relevant portion of *Jean* never cites 8 U.S.C. § 1229a(b)(4)(A), the statute we hold was violated in this case. See *Jean*, 435 F.3d at 483–84. What is more, *Jean* emphasized that its standard of review was especially deferential because the noncitizen in that case "failed to petition for review of the underlying decision of the immigration judge" and this Court's review was thus "limited to whether the [Board] abused its considerable discretion in denying [a] motion to reconsider." *Id.* at 483. Finally, and as the government itself points out, the attorney in *Jean* withdrew *after* the IJ had already held a final merits hearing—a situation quite different from requiring Rodriguez-Solis to proceed pro se *at* her final merits hearing. See *id.* (emphasizing that "the submission of formal testimony and documentary evidence was essentially complete" when the attorney withdrew).

15

Lastly, the government cites three decisions from our sister circuits. Each is distinguishable.

The government's best case is *Mendoza-Garcia v. Barr*, 918 F.3d 498 (6th Cir. 2019). True, that decision denied relief after concluding a noncitizen "was on notice of the need to pay his attorney or find new representation" "approximately six weeks" before the final merits hearing at which his previous attorney was granted permission to withdraw without any objection from the noncitizen. *Id.* at 506. But here the Board described the relevant period as meaningfully shorter ("approximately one month," JA 4), and, as we have explained, even that period fails to account for the need to submit any updated materials 30 days *before* the final hearing. Cf. *Mendoza-Garcia*, 918 F.3d at 506 (describing it as "highly unlikely" that any period "amounting to less than two weeks' notice" would protect the statutory right to counsel). What is more, the *Mendoza-Garcia* court repeatedly emphasized that it was reviewing only for "abuse of discretion" and suggested it might have reached a different result under a less "demanding standard" of review. *Id.* at 507. Here, in contrast, our precedent establishes that our standard of review is de novo, see *Rusu*, 296 F.3d at 320, and the government offered no contrary authority in either its brief or during oral argument.

The other two cases help Rodriguez-Solis more than the government. In *Alsamhouri v. Gonzales*, 484 F.3d 117 (1st Cir. 2007), the noncitizen—not the original lawyer—decided to terminate the representation and had secured new counsel by the time of the merits hearing. See *id.* at 119–20 (noting the new lawyer was present at the merits hearing). And *Arrey v. Barr*, 916 F.3d 1149 (9th Cir. 2019), may represent the paradigmatic situation

16

in which proceeding with a hearing over a then-unrepresented noncitizen's objection does *not* violate the statutory right to counsel. In that case, the IJ had already granted the noncitizen "four continuances" over four months "to allow [her] to obtain counsel" and "repeatedly warned" that it "would not continue her case any further." *Id.* at 1158 & n.3; see *id.* at 1153 (emphasizing the several-month period between the first continuance being granted and the date of the final hearing). For those reasons, the Ninth Circuit concluded the noncitizen "was on notice of the consequences" of failing to find a new lawyer by the final hearing date. *Id.* at 1158; see also *Gandarillas-Zambrana v. Board of Immigr. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995) (concluding an "IJ did all that was necessary to safeguard [a noncitizen]'s statutory right to counsel when the IJ advised [the noncitizen] of that right, gave him a list of free and inexpensive legal services in the area, and *postponed the hearing to allow him time to secure representation*" (emphasis added)). Here, in contrast, the IJ denied Rodriguez-Solis's first-ever request for more time to find a new attorney. And—even when asked directly at oral argument, see Oral Arg. 22:18–23:09—the government has been unable to dispute Rodriguez-Solis's assertion that she was never advised that she would have to represent herself if she arrived at the October 18 merits hearing without a lawyer, see Rodriguez-Solis Reply Br. 12.

## B.

The Board concluded only that Rodriguez-Solis's rights were not violated and did not reach any questions about prejudice. Having concluded the Board's decision cannot be sustained on the only grounds it gave, we grant the petition for review, vacate the final order of removal, and remand for the agency to consider prejudice in the first instance.

Two principles inform our decision to take this course. For one thing, as a matter of basic administrative law, "an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); accord *Securities & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 95 (1943). Except under narrow circumstances not present here, this rule prohibits us from *denying* a petition for review (and thus upholding the Board's order) based on grounds the Board never articulated. And even if *Chenery* does not directly forbid us from going beyond the Board's analysis so long as we *grant* the petition for review, that is where the second principle comes into play: "[W]e are a court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005). For that reason, we have often vacated final orders of removal and remanded to the Board for it to consider issues in the first instance rather than deciding them ourselves. See, *e.g.*, *Tinoco Acevedo v. Garland*, 44 F.4th 241, 249–50 (4th Cir. 2022); *Nken v. Holder*, 585 F.3d 818, 822–23 (4th Cir. 2009).

Despite these well-established principles, the government opposes remand, insisting that "[t]o prevail *in this Court*, Rodriguez-Solis must" establish both a violation and prejudice. Gov't Br. 33 (emphasis added). We disagree. To be sure, Rodriguez-Solis will need to satisfy all relevant requirements to ultimately prevail on her claim that the IJ's decision should be vacated and she should be given a new merits hearing. But that fact poses no barrier to our vacating the Board's legally erroneous conclusion at step one and

giving the Board its usual chance to take the first crack at step two.[4]

In contrast, Rodriguez-Solis offers us a menu of three options: (1) hold no prejudice showing is required for violations of the statute at issue; (2) remand for the Board to consider the prejudice issue in the first instance; or (3) conduct a prejudice analysis ourselves and conclude she wins. Although we have already explained why we are choosing Option #2 over Option #3, we briefly explain why we are not adopting Rodriguez-Solis's formulation of Option #1.

This Court has stated that, to succeed "on a claim that [their] statutory or regulatory rights were infringed," a noncitizen must establish *both* a violation of that right and that they were "prejudiced by any such violation." *Rusu*, 296 F.3d at 320 (quotation marks removed). At no point during her briefing does Rodriguez-Solis acknowledge this statement or attempt to explain how it squares with her argument that no prejudice is required in this context. Cf. *Delgado-Corea v. Immigration & Naturalization Serv.*, 804 F.2d 261, 262–63 (4th Cir. 1986) (holding noncitizens must establish prejudice to obtain relief on a claim that they were not properly advised about "the availability of free legal services" as required by federal regulations (quotation marks removed));

---

[4] Although it also responds to Rodriguez-Solis's arguments about the *merits* of the prejudice issue, the government does not argue that remanding for the Board to address the issue would run afoul of administrative law's harmless-error rule. Cf. *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 589–91 (2025) (discussing the tension between the *Chenery* remand rule and the Administrative Procedure Act's harmless-error rule but declining to "provide a complete answer" resolving that tension). We will not make such an argument on the government's behalf. After all, "[e]ven appellees waive arguments by failing to brief them." *Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023) (quotation marks removed).

*Montes-Lopez v. Holder*, 694 F.3d 1085, 1092 (9th Cir. 2012) (identifying this circuit as one that "require[s] a showing of prejudice" for "violations of the right-to-counsel regulations" and citing *Delgado-Corea*). That said, both this Court and the Board have held that, for at least some categories of statutory violations, prejudice may be *presumed*. See *Quintero v. Garland*, 998 F.3d 612, 641–42 (4th Cir. 2021) (so holding for violations of a different subsection of Section 1229a(b)); see also *Delgado-Corea*, 804 F.2d at 263 (describing two categories of cases in which the Board has said that "prejudice may be presumed" (quoting *Matter of Garcia-Flores*, 17 I. & N. Dec. 325, 329 (B.I.A. 1980))).

Consistent with our usual approach, we remand to the Board to consider prejudice in the first instance. In particular, the Board should address: (1) the precise nature of any prejudice requirement for violations of Section 1229a(b)(4)(A)'s right to counsel; (2) whether such prejudice may be presumed; (3) if so, how the government would go about rebutting that presumption; and (4) having answered all those questions, whether there was prejudice in this case. Cf. *United States v. Gonzales-Lopez*, 548 U.S. 140, 148–51 & n.4 (2006) (describing the "difficulty of assessing" prejudice resulting from Sixth Amendment "choice-of-counsel violation[s]"); *Quintero*, 998 F.3d at 642 (explaining why the statutory error in that case was not "amenable to the ordinary prejudice inquiry").

\* \* \*

The petition for review is granted. The final order of removal is vacated, and the matter is remanded for further proceedings consistent with this opinion.

*SO ORDERED*

20

QUATTLEBAUM, Circuit Judge, dissenting:

An alien seeking asylum, withholding of removal and Convention Against Torture relief does not have a Sixth Amendment right to counsel. *Gandarillas-Zambrana v. Bd. of Immigr. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995). But they do have "the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings." 8 U.S.C. § 1229a(b)(4)(A). Given those principles, what should have happened when petitioner Josselyn Gabriela Rodriguez-Solis moved for a continuance on the day of her merits hearing, seeking time to find a new lawyer though she learned that her previous attorney intended to withdraw over two months earlier? According to the majority, § 1229a(b)(4)(A) requires she be given a reasonable time and opportunity to find replacement counsel. And it finds the eight weeks that Rodriguez-Solis had here were not enough. Thus, as the majority sees it, the immigration judge committed legal error in denying the continuance and the Board of Immigration Appeals did as well in affirming the immigration judge.

I disagree. Nothing in § 1229a(b)(4)(A) says an alien gets a reasonable time and opportunity to secure a new lawyer. The majority's reasoning creates rights that the text of the statute does not support, interpreting it to be very similar, if not identical, to the Sixth Amendment right our precedent makes clear does not apply. Instead, we should review the denial of a motion for a continuance as we always do—for abuse of discretion. Under that standard, the petition for review here fails.

I respectfully dissent.

21

I.

Rodriguez-Solis arrived in the United States from Honduras in early 2010. According to Rodriguez-Solis, she fled Honduras to escape an abusive father who was involved in murdering one of her sisters. Upon her arrival, the Department of Homeland Security charged Rodriguez-Solis with unlawful entry and ordered her to removal proceedings.

On the same day that DHS charged Rodriguez-Solis, she signed a form entitled "Notice to Respondent." J.A. 853. Among other information, the notice stated that she had the opportunity to be represented by an attorney at no expense to the government and that, unless she requested more time, her initial hearing would be scheduled no earlier than ten days from the notice to give her "sufficient time" to obtain an attorney. J.A. 854.

That July, represented by counsel, Rodriguez-Solis appeared before an immigration judge in North Carolina. She waived a formal reading of her rights and admitted that she was removable. But the immigration judge continued the hearing without explicitly ordering her removal.

Shortly before the later-scheduled hearing, Rodriguez-Solis' attorney moved for a continuance to prepare an application for asylum, which the immigration judge granted. Rodriguez-Solis eventually submitted applications for asylum, withholding of removal and CAT relief. She sought asylum based on her membership in a particular social group, which she described as "Honduran women viewed as property by her family as defined by kinship ties." J.A. 659.

22

Following additional delays, the immigration judge set a merits hearing for September 2013. But before this hearing took place, the government, exercising its prosecutorial discretion, moved to administratively close the removal proceedings. The immigration judge granted the motion.

In May 2017, the government moved to reopen removal proceedings against Rodriguez-Solis. The immigration judge granted the motion and set the case for a September 2017 hearing. Before the September hearing could proceed, Rodriguez-Solis' attorney moved for a continuance because Rodriguez-Solis was pregnant and her doctor recommended she not travel. The immigration judge granted that motion and reset the hearing for January 2018.

For reasons not apparent from the record, the immigration court later moved the hearing to May 3, 2018. Neither Rodriguez-Solis nor her attorney appeared for this hearing. So, the immigration judge deemed Rodriguez-Solis' applications for relief abandoned and ordered her removed to Honduras.

A few weeks later, through her attorney, Rodriguez-Solis moved to reopen the proceedings. Her attorney explained that she, the attorney, had failed to appear due to a calendaring error. The attorney also said that Rodriguez-Solis did not attend because she, Rodriguez-Solis, believed her attorney sought a continuance so that Rodriguez-Solis could seek a second legal opinion. The immigration judge granted the motion and set the case for a February 2019 hearing.

As the hearing neared, Rodriguez-Solis' attorney requested a Honduran sign language interpreter so that Rodriguez-Solis' other sister, whom the attorney described as

23

"a critical witness," could participate in the hearing. J.A. 667. The immigration judge granted the motion.

After that, the immigration court reset Rodriguez-Solis' hearing for September 2019, then June 2020 and finally August 2021. The reasons for these delays are not explained in the record.

On the day of the hearing—August 9—Rodriguez-Solis requested a continuance because she was exposed to COVID-19. The immigration judge granted the request and continued the hearing until October 18. The immigration judge selected the October date for the hearing because it coincided with a hearing concerning Rodriguez-Solis' sister, for which the immigration judge already had obtained the assistance of the "one certified Honduran sign language interpreter in the entire country available for the Court to use." J.A. 117.

During the August 9 hearing, Rodriguez-Solis' attorney expressed an interest in updating her substantive submissions, filed years earlier. Also, the immigration judge raised the possibility that Rodriguez-Solis could apply for cancellation of removal. The immigration judge set a September 18 deadline for Rodriguez-Solis to submit "supplemental documents." J.A. 119.

Just one week later, on August 17, Rodriguez-Solis' attorney moved to withdraw due to Rodriguez-Solis' "fail[ure] to cooperate." J.A. 624. The attorney represented that she had notified Rodriguez-Solis, confirmed that Rodriguez-Solis had received the message, provided her with a copy of her file and advised her to attend future proceedings. The immigration judge granted the motion on August 24.

24

Rodriguez-Solis' hearing went forward as scheduled on October 18. She appeared pro se. But, at the outset, Rodriguez-Solis requested "an extension" because her previous attorney had only let her know "a month" before the hearing that she had withdrawn representation. J.A. 127. Rodriguez-Solis stated:

> [A]nd ever since I have been trying to find a lawyer. And since this situation with the Court is kind of difficult at this time, all the lawyers are giving appointments for a month. The only one who responded to a phone call through a conference was Attorney Lopez and he said that he could not represent me because he would only have one week before the hearing, and he could not be ready. Then I wanted to see if it's possible to get an extension so that I could have a lawyer for my asylum case. The reason why I am here with my sister is because we believe that we have true reasons for not go [sic] back to our country and so we would like to have a lawyer to represent our case so that we could present it properly. If you would give me the opportunity to present my case with a lawyer, I would appreciate it.

J.A. 127. The government opposed Rodriguez-Solis' request.

The immigration judge denied the motion, stating on the record:

> Your case has been pending for 11 years. You've had an attorney for most of it. [Your attorney] filed a request to withdraw from your case at the end of August, so at this point, it has been about six weeks since that motion had been granted. I'm not inclined to grant a continuance at this point. We continued your case last time at your attorney's request and you already got another extension so at this point, the Court is ready to proceed. The Government's ready to proceed. We've reviewed your file multiple times. We reviewed it last time because your case was scheduled before and then it didn't go forward, and we reviewed it a second time for today. Multiple interpreters have been ordered and everybody is ready to go at this point. So the request for the continuance is denied and we're going to proceed today. Do you have any other questions?

J.A. 127–28.

Rodriguez-Solis protested:

> I do understand the reasons that both of you are saying, but my case was extended because it had been administratively closed for many years and

25

when it was reopened, then the Court date was given for a year later and the last reason and that's when interpreter stopped respondent [sic]. The last time I was exposed to COVID because of work reasons, we did a test, and we were negative. I felt sure having my lawyer that now [sic] that is why I'm requesting an extension because I do not feel secure by myself and so that we can represent the case properly. The last time the point is that last time that my case was continue [sic], it was not because we wanted to, it was because I was exposed to COVID, and we did not have the negative results.

J.A. 128. In response, the immigration judge emphasized that Rodriguez-Solis had six weeks to obtain counsel. And although Rodriguez-Solis reiterated that she had attempted to retain an attorney, the immigration judge reiterated that it was denying her motion for a continuance.

The hearing proceeded. During it, the immigration judge facilitated Rodriguez-Solis' presentation of her case. Specifically, the immigration judge reviewed Rodriguez-Solis' application with her to confirm its accuracy and took both Rodriguez-Solis' and her sister's testimonies before the government questioned them.[1]

At the hearing, Rodriguez-Solis claimed she feared returning to Honduras because she believed her father would kidnap and kill her. Rodriguez-Solis attested to her fear in a written statement and in her testimony. In support of her claim, Rodriguez-Solis described how her father abused her and her family members and, when she fled, tracked down and murdered one of her sisters.

---

[1] While the immigration judge reviewed Rodriguez-Solis' application with her, Rodriguez-Solis criticized the work of her former lawyer, claiming she had not properly done her job. The immigration judge responded that this criticism lacked merit.

But the government cross-examined Rodriguez-Solis with another written statement she had provided, which revealed discrepancies in her testimony. Importantly, Rodriguez-Solis' second statement indicated that a stalker, not her father, had murdered her sister. The government also pointed out differences between Rodriguez-Solis' testimony and statements concerning the details of her sister's disappearance and death.

Not only were inconsistencies in Rodriguez-Solis' testimony revealed, but she and her sister were disruptive during the hearing. In its later order, the immigration judge described their behavior:

> [Rodriguez-Solis'] observing sister repeatedly injected herself into the proceedings and had to be removed from the courtroom. [Rodriguez-Solis] also repeatedly injected herself into the testimony of her sister and while the Court rephrased questions in the manner [Rodriguez-Solis] suggested, because she claimed her sister did not understand the question, it was clear to both the Court and the interpreter that the witness understood the questions, but the answer was not what [Rodriguez-Solis] wanted. At [Rodriguez-Solis'] request, a certified Honduran Sign Language interpreter had been ordered. The interpreter, however, noted that [Rodriguez-Solis' sister] repeatedly reverted to using American Sign Language. This, however, was not a problem as the interpreter understands eighteen different languages and was able to fully interpret [her sister's] responses for the Court.

J.A. 83.

At the end of the hearing, the immigration judge offered Rodriguez-Solis the chance to present any additional evidence and argument in support of her position that she had not yet offered.

The immigration judge later issued a comprehensive written order denying Rodriguez-Solis' applications for relief and ordering her removed to Honduras. In its decision, the immigration judge recounted that Rodriguez-Solis had not appeared for the

27

May 3, 2018 hearing; that the court continued the August 9 hearing due to her COVID exposure; that the court granted her attorney's motion to withdraw on August 24; and that during the October 18 hearing she "requested a continuance to obtain counsel claiming she had been informed that she had no attorney less than a month before and had insufficient time to find an attorney." J.A. 79. Repeating some of the reasons for denying Rodriguez-Solis' motion that were explained during the hearing, the immigration judge pointed out that her previous attorney had moved to withdraw "two months previously and communicated such to" her; that the case "had been pending for an exceptional amount of time;" and that, as to the attorneys she spoke with, "she had contacted [them] just days before the hearing," and they "told her it was simply too close in time to the hearing for them to consider taking it on." J.A. 79.

On the merits of Rodriguez-Solis' applications, the immigration judge first found Rodriguez-Solis lacked credibility because of the inconsistencies in her statements and testimony. Noting Rodriguez-Solis' differing statements went "to the heart" of her claim and "the underlying basis for her fear" of returning to Honduras, the immigration judge denied her applications for asylum and withholding of removal for failure to meet her burden of proof. J.A. 85. As for her request for CAT relief, the immigration judge denied her application because she had not shown the Honduran government "would acquiesce or turn a blind eye" to Rodriguez-Solis' plight should she request assistance. J.A. 87.

Represented by new counsel, Rodriguez-Solis appealed to the Board of Immigration Appeals. Rodriguez-Solis argued that the immigration judge violated her right to due process and her statutory privilege of representation by denying her a continuance to secure

28

an attorney. She also challenged the immigration judge's adverse credibility determination and its denial of her CAT claim.

The Board dismissed Rodriguez-Solis' appeal. As to the denial of a continuance, the Board started by noting two of the immigration judge's findings during the October 2021 hearing—the case was almost eleven years old, and Rodriguez-Solis had approximately six weeks to obtain replacement counsel. It then framed Rodriguez-Solis's argument—"that the six to eight weeks between her attorney withdrawing representation[] and the final hearing was [sic] insufficient to allow her to find an attorney." J.A. 4. The Board rejected this argument. It emphasized that Rodriguez-Solis had counsel ever since her proceedings were reopened, including during her pregnancy; that Rodriguez-Solis' attorney informed her that she intended to withdraw; and that Rodriguez-Solis had "approximately one month" before the October 18 hearing to find an attorney, during which time she attempted to do so. J.A. 4. Under these circumstances, the Board concluded that she "was provided with sufficient time to retain counsel before her final hearing . . . ." J.A. 4.

As to the merits, the Board affirmed the immigration judge's determination that Rodriguez-Solis did not present credibly, finding no clear error in the immigration judge's analysis of the inconsistencies in Rodriguez-Solis' statements and testimony. The Board also affirmed the immigration judge's denial of CAT relief, agreeing that Rodriguez-Solis had not shown the Honduran government would have acquiesced or consented to torture against her.

Rodriguez-Solis timely petitioned for review.

29

II.

Rodriguez-Solis takes issue with both the immigration judge's and the Board's decisions. She argues the immigration judge improperly denied her motion for a continuance for two reasons. First, she claims that 8 U.S.C. § 1229a(b)(4)(A) gave her a reasonable time and opportunity to obtain a replacement attorney. And she insists that by denying her request for a continuance, the immigration judge did not provide that to her. Second, Rodriguez-Solis argues the immigration judge's decision violated her Fifth Amendment right to due process. Finally, as for the Board, she faults it for rejecting these challenges.

I disagree. To explain, I begin with our scope of review before addressing Rodriguez-Solis' statutory and constitutional claims.

A.

We only have jurisdiction to review "a final order of removal," 8 U.S.C. § 1252(a)(1), "entered after exhaustion of all administrative remedies," *Gandarillas-Zambrana*, 44 F.3d at 1255. Because the Board is the highest administrative authority, that means we typically review its decisions instead of those made by immigration judges. *Id.* But when the Board affirms an immigration judge's decision and adds its own reasoning, we review both decisions. *Tetteh v. Garland*, 995 F.3d 361, 365 (4th Cir. 2021). That's what happened here. The Board described the immigration judge's host of reasons for denying Rodriguez-Solis' request for a continuance and added some of its own reasoning

30

in affirming that decision. So, I will review both the immigration judge's decision and the Board's.[2]

## B.

### 1.

Beginning with Rodriguez-Solis' § 1229a(b)(4)(A) claim, the first question is whether the statute gives her a reasonable time and opportunity to find replacement counsel. The majority adopts Rodriguez-Solis' view that it does. But I read § 1229a(b)(4)(A) differently. Nothing in the text says a petitioner gets a reasonable time and opportunity to find a replacement attorney. Instead, the statute provides that a petitioner "shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings." 8 U.S.C. § 1229a(b)(4)(A). That language does not mandate the appointment of counsel or specify any timing requirements, and it says nothing about continuances.

Other provisions of the Immigration and Nationality Act explain what the privilege means. Section 1229(a)(1)(E) and (b)(1)–(2) provide that an alien's notice to appear for removal proceedings shall indicate they may be represented by counsel, specify their initial

---

[2] Rodriguez-Solis doesn't argue we shouldn't be looking at the immigration judge's decision. Instead, she assumes the Board "implicitly adopted the other reasons the IJ cited." *See* Op. Br. at 21; *see also* Op. Br. at 25 ("The BIA noted each of the reasons the IJ cited for denying Petitioner's request for a continuance, but it cited only one in finding that she was not deprived of her right to counsel: that Petitioner had sufficient time to find a new attorney after learning [her attorney] would no longer represent her."); Op. Br. at 32–37 (addressing other reasons given by immigration judge). For its part, the government says we can and should review both decisions.

31

hearing won't be scheduled earlier than ten days after service of the notice to appear so that they have time to obtain counsel and include a list of pro bono attorneys available to represent them. 8 U.S.C. § 1229(a)(1)(E), (b)(1)–(2). And our precedent says complying with these provisions is "all that [i]s necessary to safeguard" an alien's privilege of counsel. *Gandarillas-Zambrana*, 44 F.3d at 1256. So does § 1229. *See* § 1229(b)(3) ("Nothing in this subsection may be construed to prevent the Attorney General from proceeding against an alien pursuant to section 1229a of this title if the time period described in paragraph (1) has elapsed and the alien has failed to secure counsel.").

Rodriguez-Solis doesn't argue the government didn't meet these requirements. And the government did not otherwise interfere with Rodriguez-Solis obtaining counsel. Thus, there was no § 1229a(b)(4)(A) violation. By requiring more, the majority creates a right that doesn't exist under the statute's text.

2.

Since § 1229a(b)(4)(A) does not provide a petitioner with a reasonable time and opportunity to find a replacement attorney, our question is simply whether the immigration judge erred in denying Rodriguez-Solis' request for a continuance. To obtain a continuance, a party must show good cause. *See* 8 C.F.R. § 1003.29; *Lendo v. Gonzales*, 493 F.3d 439, 441 (4th Cir. 2007). And we generally review denials of requests for continuances for abuse of discretion. *Cabrera v. Garland*, 21 F.4th 878, 882 (4th Cir. 2022).

While we have not said that in this precise situation, *Jean v. Gonzales*, 435 F.3d 475 (4th Cir. 2006), suggests abuse of discretion is the right standard. There, the petition for

review involved the Board's denial of a motion for reconsideration—which the petitioner had filed after the Board rendered a decision on the merits—rather than a petition for review of the Board's merits decision. *Id.* at 479. Among other arguments, the petitioner contended that the immigration judge's denial of a continuance "to secure replacement counsel deprived her of a fair immigration proceeding as mandated by the principles of procedural due process." *Id.* at 483. Because the petitioner did not seek review of the immigration judge's underlying decision, "our review [wa]s limited to whether the BIA abused its considerable discretion in denying [the petitioner]'s motion to reconsider the denial of a continuance which is *in and of itself* a discretionary decision for the immigration judge" *Id.*[3]

---

[3] The Sixth Circuit also reviews denials of continuances in this context for abuse of discretion. In *Mendoza-Garcia v. Barr*, 918 F.3d 498 (6th Cir. 2019), the petitioner requested review of the Board's merits decision affirming an immigration judge's ruling. *Id.* at 503. Among other arguments, the petitioner asserted that "he had not been given a reasonable opportunity to obtain counsel" by the immigration judge. *See id.* More specifically, he challenged the immigration judge's denial of a continuance premised on the need for more time to retain an attorney, a question the Sixth Circuit noted had statutory and constitutional contours. *See id.* at 505, 506–07. Still, the Sixth Circuit reviewed the immigration judge's denial of a continuance for abuse of discretion. *Id.* at 505. In contrast, the First Circuit recognizes a distinction between abuse of discretion review and de novo review when faced with the question of whether an immigration judge improperly denied a petitioner's request for a continuance. In *Alsamhouri v. Gonzalez*, 484 F.3d 117 (1st Cir. 2007), the petitioner challenged an immigration judge's denial of a continuance on various grounds. *Id.* at 118, 122–25. To the extent the petitioner raised arguments unrelated to due process and his statutory privilege, the First Circuit reviewed the denial of a continuance for abuse of discretion. *Id.* at 122–24. But concerning the petitioner's claim that the denial of a continuance violated his right to due process and his statutory privilege of counsel, the First Circuit applied de novo review. *Id.* at 124–25. I find the Sixth Circuit's reasoning persuasive.

33

To be sure, our case is not exactly like *Jean*. Unlike in *Jean*, Rodriguez-Solis has raised a merits challenge—not just a challenge to the denial of a motion to reconsider. But abuse of discretion still seems like the appropriate standard. After all, the immigration judge and the Board acknowledged Rodriguez-Solis had a right to obtain an attorney under § 1229a(b)(4)(A). Thus, they were not interpreting what the statute required. Rather, they engaged with the specific facts of the record to evaluate the relief Rodriguez-Solis requested. They both considered the amount of time she had between learning that her previous attorney was withdrawing and the hearing. Both then determined that she had enough time to find a new lawyer. Both also considered that finding, along with other factors, to deny the continuance. Fact-based decisions like this should be left to the discretion of the immigration judge.

3.

Applying that standard, there isn't much to argue about. There can be no credible argument that the immigration judge abused its discretion. In denying Rodriguez-Solis' motion, the immigration judge pointed out that the previous attorney had moved to withdraw two months prior to the October 18 hearing, that the attorney notified Rodriguez-Solis that she was moving to withdraw, that the immigration judge granted the motion six weeks before the hearing and that, while Rodriguez-Solis had reached out to at least one other lawyer, she had done so very close to the date of the hearing.

The immigration judge also noted that Rodriguez-Solis had an attorney for eleven years of the proceedings; that the case had been pending for over a decade; that two requests for continuances had already been granted; that the government was ready to proceed; that

34

the court had reviewed the file in order to be ready (as it had on other occasions) and was

ready to proceed; and that the court had arranged for a Honduran sign language interpreter

to be present—which Rodriguez-Solis had requested and which the government had to

arrange and pay for. I suppose an immigration judge could have viewed these facts

differently and granted a continuance. But denying the request is not even close to an abuse

of discretion.[4]

The Board's decision supports this result. It affirmed the immigration judge's denial

of Rodriguez-Solis' motion to continue the hearing. In doing so, it identified some of the

immigration judge's reasons, specified some of its own and rejected Rodriguez-Solis'

challenge.[5]

---

[4] While not necessary to support the immigration judge's decision, the record also contains some evidence of Rodriguez-Solis' dilatory behavior. When Rodriguez-Solis' attorney moved to withdraw in August 2021, her attorney cited Rodriguez-Solis' "fail[ure] to cooperate" as the reason for withdrawal. J.A. 624. *Cf. Al Khouri v. Ashcroft*, 362 F.3d 461, 464 (8th Cir. 2004) ("It would be nonsensical to recognize a constitutional entitlement to a continuance based on counsel's withdrawal when petitioners themselves are responsible for the withdrawal."). When considered alongside the other circumstances in this case, this behavior underscores why Rodriguez-Solis had more than enough time to secure a new attorney.

[5] Finally, this issue is not much harder if Rodriguez-Solis is right that § 1229a(b)(4)(A) gives her a reasonable time and opportunity to obtain a replacement attorney, and even if we review that issue de novo. Courts have described five days as an "unrealistically short time to secure counsel," *Biwot v. Gonzalez*, 403 F.3d 1094, 1099 (9th Cir. 2005), and have found that a request for a two-week continuance to hire an attorney was reasonable, *id.*; *see also Hernandez Lara v. Barr*, 962 F.3d 45, 55 (1st Cir. 2020). By contrast, courts have found six weeks sufficient. *Mendoza-Garcia*, 918 F.3d at 507 ("Mendoza-Garcia has not identified any cases—and we are aware of none—finding that six weeks is not a reasonable period of time to obtain counsel."). At oral argument, Rodriguez-Solis identified two decisions in which courts have found statutory and/or constitutional violations even when individuals had more than six weeks to seek counsel.

4.

The majority, of course, reaches a different conclusion. It contends the Board misunderstood the timeline of events between Rodriguez-Solis' attorney's motion to withdraw and the October 18 hearing. Maj. Op. at 11–12. Because of these perceived misunderstandings, the majority finds the Board committed legal error. Maj. Op. at 12. I disagree.

First, I see nothing to indicate any misunderstanding of the timeline. There is really no dispute of fact about the sequence of events. Rodriguez-Solis' prior attorney moved to withdraw on August 17.[6] The attorney indicated that by that time, she notified Rodriguez-

---

In *Freza v. Attorney General*, 49 F.4th 293 (3d Cir. 2022), the petitioner retained counsel the day prior to a hearing, and the immigration judge denied that attorney's motion for a continuance so that the attorney would have had 30 additional days to prepare. *Id.* at 296–97. In finding that this decision violated procedural safeguards, *Freza* emphasized that the petitioner already had obtained counsel prior to the hearing but had less than 24 hours to prepare. *Id.* at 299–300. In *Usubakunov v. Garland*, 16 F.4th 1299 (9th Cir. 2021), the petitioner was detained, did not speak English and was separated from their family members. *Id.* at 1305–06. The petitioner found an attorney willing to help and asked for a discrete continuance so the attorney could prepare. *Id.* at 1301, 1302. *Usubakunov* found the immigration judge's denial of that request was unreasonable. *Id.* at 1305. But those cases are distinguishable. Neither involved a petitioner who had a lawyer for eleven years, whose prior lawyer had already prepared applications for relief and whose prior lawyer had moved to withdraw based on the petitioner's failure to cooperate. Neither involved a case that had been pending over a decade. And neither involved a petitioner who requested more time to get replacement counsel after the court granted that petitioner's earlier request for an interpreter who had already been retained and transported to the local venue.

[6] The majority calls the motion "terse." Maj. Op. at 5. To the extent that reflects criticism of the attorney, I see nothing unprofessional about the attorney's motion. To the contrary, laying out the dispute that led to the motion in more detail not only would likely have revealed privileged communications but also would have aired the dirty laundry of their conflict, likely in a way that would have reflected badly on Rodriguez-Solis, in the public record.

Solis of her motion, confirmed Rodriguez-Solis had received that information and delivered the file to her. Rodriguez-Solis did not oppose the motion or contest its factual assertions. The immigration judge granted the motion on August 24. And then the hearing took place on October 18—two months after Rodriguez-Solis knew about the motion to withdraw.

True, there was a September 18 deadline for evidentiary submissions. But that deadline was one month after Rodriguez-Solis learned of her attorney's motion to withdraw. According to the majority, the fact that neither the immigration judge nor the Board mentioned that date in their decisions indicates somehow that they misunderstood the timeline. Maj. Op. at 11–12. I see it differently. It's an indication that they meant what they said—that Rodriguez-Solis had a reasonable amount of time to get another lawyer and that the September 18 date did not change things.

The majority also explains why, from its perspective, Rodriguez-Solis needed more time. Maj. Op. at 12–13. It points out that a new lawyer would need to review the file, decide if additional filings needed to be made, re-evaluate the particular social group Rodriguez-Solis advanced early in the case, consider whether cancellation of removal relief should be pursued and decide which witnesses should be called. Maj. Op. at 12–13. According to the majority, more time was also needed because any new lawyer would need to build rapport and use interpreters. Maj. Op. at 12.

Those are fair considerations. But so are the reasons the immigration judge relied on. Because they often involve competing factors, requests for continuances are the precise

type of decisions that should be left to the discretion of the immigration judge. I see no error, much less reversible error, in the immigration judge's decision.

5.

Last, I agree with the majority that, even if the immigration judge violated § 1229a(b)(4)(A), Rodriguez-Solis must show that she was prejudiced. Maj. Op. at 19; *Rusu v. U.S. Immigr. & Naturalization Serv.*, 296 F.3d 316, 320 (4th Cir. 2002) (holding that ordinarily "an alien 'must establish prejudice in order to invalidate deportation proceedings on a claim that [their] statutory or regulatory rights were infringed'") (quoting *Garcia-Guzman v. Reno*, 65 F. Supp. 2d 1077, 1085 (N.D. Cal. 1999)). I also agree with the majority that the Board did not address prejudice. And finally, I agree with the majority that generally courts may not affirm an agency's decision on a ground the agency did not reach. *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 95 (1943).

But that rule is not absolute. Three years after the Supreme Court decided *Chenery*, Congress enacted the Administrative Procedure Act. The APA provides that, when a court reviews an agency action, "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. This language gestures to the harmless error rule, which today requires courts to "disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

Recently, in *Food & Drug Administration v. Wages & White Lion Investments, L.L.C.*, 604 U.S. 542 (2025), the Supreme Court addressed the tension between the APA and *Chenery*. *White Lion*, 604 U.S. at 587–91. To the Supreme Court, "[t]he most natural interpretation of the APA's language is [] that reviewing courts should adapt the 'rule of

38

prejudicial error' applicable in ordinary civil litigation . . . to the administrative-law context, which, of course, includes the" *Chenery* remand rule. *White Lion*, 604 U.S. at 588. Nevertheless, this adaptation process should not proceed in such a "way" where "harmless error might swallow the remand rule." *Id.* at 589.

In *White Lion*, the Supreme Court harmonized these principles by recognizing two instances where the harmless error rule overcomes the strictures of *Chenery*. *See White Lion*, 604 U.S. at 589–91. First, the Supreme Court confirmed an exception, recognized in *Calcutt v. Federal Deposit Insurance Corp.*, 598 U.S. 623 (2023), that remand may be unwarranted in cases where there is not the slightest uncertainty as to the outcome of the agency's proceedings on remand. *See White Lion*, 604 U.S. at 589. Second, *White Lion* noted that a remand may not be necessary when an agency's decision is supported by a plethora of factual findings, only one of which is unsound. *Id.* at 590.

Following *White Lion*, I would not remand. For three reasons, I don't see any uncertainty as to the outcome of the agency proceedings. First, the immigration judge's adverse credibility determination on issues that go to the heart of Rodriguez-Solis' claims for relief, which the Board affirmed, dooms those claims, whether she had a lawyer or not. Keep in mind, that determination was based on inconsistencies between Rodriguez-Solis' testimony and written statements she submitted in support of her and her sister's cases, as well as her sister's testimony. And the inconsistencies were not on ancillary or unimportant issues. They went to the very heart of Rodriguez-Solis' claims. Rodriguez-Solis' whole case was based on her insistence that her father killed her sister. Yet in another statement, she said someone else did the killing. Good lawyering can overcome some warts on a case,

39

but not a petitioner's own sworn statement inconsistent with the most critical facts that allegedly support her claims.

Second, the underlying facts of Rodriguez-Solis' claims involve intra-family violence. Let me be clear. Such violence, if true, is terrible. But it does not qualify as persecution or torture under the immigration laws. *See Toledo-Vasquez v. Garland*, 27 F.4th 281, 290 (4th Cir. 2022) ("[N]othing in the record compels us to conclude that this is not a private and purely personal dispute to which asylum does not apply."); *Velasquez v. Sessions*, 866 F.3d 188, 196 (4th Cir. 2017) (concluding "private and purely personal dispute between grandmother and mother regarding" family member "f[ell] outside the scope of asylum protection").

Third, even aside from the fact that Rodriguez-Solis' claim involves intra-family violence, it would not satisfy our circuit's requirements for a particular social group. Recall that Rodriguez-Solis, while represented by counsel, claimed she was persecuted on account of being a member of the particular social group of "Honduran women viewed as property by her family as defined by kinship ties." J.A. 659. The three requirements for a particular social group are immutability, particularity and social distinction. *Garcia v. Garland*, 73 F.4th 219, 229–30 (4th Cir. 2023). Rodriguez-Solis' alleged group satisfies none of those requirements. Whether someone is viewed as property is not immutable. It can change based on the viewpoints of the family members. Nor is it particular. Particularity means you can define who is in and who is out. *See id.* at 230. How can it be determined who is in the group of people who are viewed as property by their families? Finally, there is no

indication that Honduras views that alleged group as distinct within that country's social order.

In sum, the immigration judge did not violate the INA in denying her motion for a continuance. And assuming it did, there is no question that her claims are fatally flawed in multiple ways. Remanding for any technical errors would serve no purpose.

C.

Rodriguez-Solis also argues that the denial of a continuance violated her Fifth Amendment right to due process.[7] "In assessing whether a deportation or asylum hearing has comported with due process, we are guided by the principles of *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)." *Rusu*, 296 F.3d at 321. There, "the Court recognized that '[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (alteration in original). What constitutes the opportunity to be heard at a meaningful time and in a meaningful manner depends on the circumstances of an individual case. *Id.* But "hearing procedures that comport with due process in the asylum context might well be unacceptable in other proceedings." *Id.* Even so, aliens must still "receive a full and fair hearing on their claims." *Id.* at 321–22. Thus, the overall question is not whether an alien has had perfect process or maximum process; it is instead whether the alien was given enough process so that the proceeding was not fundamentally unfair.

---

[7] We review de novo whether procedures used in immigration proceedings contravene due process. *Rusu*, 296 F.3d at 320.

Determining whether an alien has received a full and fair hearing requires looking to the totality of the proceedings. For example, in *Rusu*, we considered several factors—fairness implications of the alleged statutory violation; the extent to which the petitioner's problems "were self-inflicted;" whether the petitioner "was afforded a substantial amount of time to explain the basis of his claim;" whether the immigration judge "made a sincere effort to understand [the petitioner's] testimony;" and whether the immigration judge "provided [the petitioner] with numerous opportunities to elaborate and to clarify" their testimony. *Id.* at 322–24.

Here, Rodriguez-Solis received a full and fair hearing. She had notice of the hearing. She had the opportunity to present evidence. Indeed, the immigration judge facilitated Rodriguez-Solis and her sister in understanding the proceeding and testifying at the hearing. The immigration judge scheduled the hearing to accommodate the specific type of interpreter Rodriguez-Solis needed for her sister to testify. And, at the conclusion of the hearing, the immigration judge afforded Rodriguez-Solis the opportunity to provide closing evidence and argument. In addition, Rodriguez-Solis had an independent decision-maker and the right to appeal.

The only thing Rodriguez-Solis claims she did not have is extra time—beyond the eight-and-a-half weeks she had already received—to find a new attorney after the one she had for eleven years withdrew because she failed to cooperate. I've already discussed why the record shows that she had a reasonable amount of time to get a replacement attorney and why the immigration judge's denial of a continuance was not an abuse of discretion. For the same reasons, the immigration judge's decision did not deprive her of due process.

42

What's more, Rodriguez-Solis has no Sixth Amendment right to counsel in removal proceedings. *Gandarillas-Zambrana*, 44 F.3d at 1256. In considering her Fifth Amendment claim, we cannot grant through the back door what has been denied through the front. Considering these circumstances, the immigration judge provided Rodriguez-Solis with a hearing that was not fundamentally unfair.[8]

### III.

The majority's decision today effectively grafts the Sixth Amendment right to counsel into removal proceedings, where it does not apply. Dislodging this move from the analysis, the immigration judge did not abuse its discretion in denying her request for a continuance. Nor did the immigration judge deprive her of a fair hearing under the Fifth Amendment. I respectfully dissent.

---

[8] And even if the process Rodriguez-Solis received was unfair, there would still be the issue of prejudice. *Rusu*, 296 F.3d at 324. As already discussed, she was not prejudiced.